**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTEBAN C. HURTADO, | ) No. CV 16-876-AS |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**PROCEEDINGS**

On April 30, 2016, Plaintiff Esteban C. Hurtado ("Plaintiff") filed a Complaint, seeking review of the Commissioner's denial of Plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Docket Entry No 1). On September 27, 2016, Defendant

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for Acting Commissioner Carolyn W. Colvin in this case. See 42 U.S.C. § 205(g).

1

filed an Answer to the Complaint, (Docket Entry No. 17), and the Certified Administrative Record ("AR"). (Docket Entry No. 18). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 12-13). On February 13, 2017, the parties filed a Joint Stipulation ("Joint Stip."), setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 21).

For the reasons discussed below, the decision of the Administrative Law Judge is AFFIRMED.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff asserts disability beginning July 28, 2008, based on alleged physical and mental health impairments related to back pain and testicular cancer. (AR 228, 232). On August 18, 2014, the Administrative Law Judge ("ALJ"), Marti Kirby, examined the record and heard testimony from Plaintiff and vocational expert ("VE"), Howard Goldfarb. (AR 39-56). On October 8, 2014, the ALJ denied Plaintiff benefits in a written decision. (AR 20-43).

The ALJ applied the five-step sequential process in evaluating Plaintiff's case. (AR 26-35). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date. (AR 28). At step two, the ALJ found that Plaintiff has the severe impairments of lumbago, disc protrusion with mild bilateral foraminal stenosis at L3-4, and lumbosacral

neuritis or radiculitis. (AR 28). At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 29). Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform light work, but can lift 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit for six hours in an eight-hour workday with regular breaks; must change positions approximately every hour for five minutes; climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally; cannot climb ladders, ropes, or scaffolds; cannot work around unprotected heights, machinery, or other hazards; cannot perform jobs requiring hypervigilance or intense concentration on a particular task; cannot perform fast paced, production, or assembly line work; and would likely be off task up to 10 percent of the workday or workweek due to chronic pain or side effects from medication. (AR 29).

In making this finding, the ALJ determined that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were less than fully credible for the following reasons: (1) Plaintiff had significant gaps in treatment from 2009 to 2011, and in 2013, Plaintiff admitted to "no longer receiving any treatment" but still had medical insurance; (2) the objective medical evidence did not support Plaintiff's allegations,

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and non-exertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

3

although recognizing that diagnostic imaging revealed moderate to severe degenerative disc disease of the lumbar spine, physical examinations showed no neurological deficits and there were no surgeries; and (3) Plaintiff admitted to performing activities that were inconsistent with his alleged symptoms, such as lifting 20 pounds repetitively "without pain" and wanting to return to work because he was "pain free." (AR 31).

The ALJ also considered Plaintiff's medical record surmising that it reflected a history of back pain, which was the product of repetitive work injuries. (AR 31). Plaintiff did not seek any treatment from 2009 to 2011, which suggested that his "symptoms were not particularly troublesome." (Id.). The ALJ found Plaintiff had a limited range of motion in the lumbar spine but physical examinations otherwise showed normal results. (AR 32). On November 10, 2011, consultative examiner, Dr. Terrance Flanagan, M.D., noted that Plaintiff was able to sit and stand with normal posture, rise out of a chair without difficulty, had a normal gait, and no paraspinal spasms. (AR 280-82). However, Plaintiff had pain with axial rotation of the trunk, could not walk on his tiptoes, and had somewhat irregular forward flexion and extension. (AR 281-82). On April 20, 2012, an x-ray and MRI of Plaintiff's lumbar spine showed moderate to severe degenerative disc disease at L5-S1, moderate disc space narrowing at L4-5, and a 4 millimeter disc and osteophyte protrusion with mild bilateral foraminal stenosis at L3-4. (AR 295-97). On August 8, 2012, pain specialist, Dr. Jos Santz, M.D., examined Plaintiff. (AR 299). Plaintiff had tenderness to

palpation, a limited range of motion, positive Faber's testing,[3] and normal neurological limits. (AR 299-300). Plaintiff told Dr. Santz that he was not in pain, could lift 20 pounds repetitively, and wanted to return to work. Dr. Santz recommended more physical therapy, but Plaintiff declined. (AR 300). On February 13, 2013, consultative examiner, Dr. Vicente R. Bernabe, D.O., examined Plaintiff. Dr. Bernarbe noted that Plaintiff was not receiving treatment for his condition and had a normal gait, slight decrease in range of motion, tenderness to palpation, and 5 out of 5 motor strength. (AR 306-08). On July 12, 2013, Plaintiff's treating physician, Dr. Pablo Sobero, M.D., examined Plaintiff finding normal results, except Plaintiff had a slight limp and used a cane. (AR 317).

The ALJ then considered the opinions of treating and nontreating physicians. The ALJ gave some weight to the opinion of Plaintiff's pain management specialist, Dr. Santz, in adopting his opinion that Plaintiff can lift and carry 20 pounds and perform overhead lifting, but he rejected Dr. Santz's opinion that Plaintiff can bend, twist, and engage in prolonged standing and kneeling. (AR 32). The ALJ gave little weight to the opinions of Plaintiff's treating physician, Dr. Sobero, orthopedic consultative examiners, Dr. Flanagan and Dr. Bernarbe, and state agency medical consultants. (AR 33).

---

[3] The (Patrick's) FABER Test stands for Flexion, Abduction and External Rotation. These three motions combined result in a clinical pain provocation test to find pathologies at the hip, lumbar and sacroiliac region. http://www.physio-pedia.com/FABER_Test.

At step four, the ALJ adopted the VE's testimony in finding that Plaintiff could perform his past relevant work as file clerk (Dictionary of Occupational Titles ("DOT") 206.387-034) as actually and generally performed. (AR 33-34). At the hearing, the VE testified that he took into account Plaintiff's exertional and nonexertional limitations and reviewed Plaintiff's work history reports in concluding that Plaintiff could perform the duties of file clerk. (AR 49-53). Plaintiff made no objection to the VE's characterization of Plaintiff's past work at the hearing. (See AR 54). As a result of these findings, the ALJ concluded that Plaintiff was not disabled. (AR 34).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 18-19). The request was denied on March 14, 2016. (AR 1-5). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To assess whether substantial evidence supports a finding, "a court must consider the record as a

whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001). As a result, "[i]f the evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends that (1) substantial evidence did not support the ALJ's finding that Plaintiff could perform his past relevant work as a file clerk; and (2) the ALJ failed to provide clear and convincing reasons to reject Plaintiff's subjective pain testimony. (Joint Stip. at 5-8, 11-15, 20-21).

**DISCUSSION**

**A.  The ALJ Properly Found That Plaintiff Could Perform His Past Relevant Work**

Plaintiff asserts that the ALJ improperly identified his past work as a file clerk because in that job Plaintiff also performed the duties of courier, making it a composite job with no counterpart in the DOT. (Joint Stip. at 5-8). The ALJ identified the least demanding duty of Plaintiff's past work and ignored his courier driving duties, which Plaintiff can no longer perform given his

mental health limitations. Because Plaintiff performed a composite job and the ALJ identified only his least demanding duties as file clerk, the ALJ erred in finding that Plaintiff could perform his past relevant work as actually and generally performed.

Defendant contends that the ALJ properly adopted the VE's testimony that Plaintiff could perform his file clerk job as actually and generally performed. Plaintiff characterized his past job as a file clerk and did not, before the present appeal, assert that Plaintiff performed a composite job. (Joint Stip. at 9). The VE relied on Plaintiff's work history reports to identify Plaintiff's file clerk job, which took into account his driving duties. (Id. at 10). Because the VE properly characterized Plaintiff's past work as a file clerk, the ALJ properly found that Plaintiff could perform the file clerk job as generally performed. (Id.).

**1. Legal Standard**

At step four, the claimant bears the burden of demonstrating that he can no longer perform his past relevant work. 20 C.F.R. §§ 404.1512(a), 404.1520(f); Barnhart v. Thomas, 540 U.S. 20, 25 (2003). A claimant may be found not disabled at step four based on a determination that he can perform past relevant work as it was actually performed or as it is generally performed in the national economy. Social Security Ruling ("SSR") 82-61, 1982 WL 31387 (Jan. 1, 1982) (either perform duties of past job as claimant describes it

or "as ordinarily required by employers throughout the national economy"). An ALJ may rely on two sources "to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82-61, and the claimant's own testimony, SSR 82-41." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001).

The DOT is the best source for determining how past relevant work is generally performed. Id. at 845-46. A claimant "may overcome the presumption that the [DOT's] entry for a given job title applies to him by demonstrating that the duties in his particular line of work were not those envisaged by the drafter of the category." Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) (internal citations omitted). Where a claimant's past work as actually performed has "significant elements of two or more occupations," it is considered a composite job with no counterpart in the DOT. SSR 82-61, 1982 WL 31387. When a job is composite, "the ALJ considers only whether the claimant can perform his past relevant work as actually performed." Cook v. Colvin, No. CV 13-7704-JPR, 2015 WL 162953, at *7 (C.D. Cal. Jan. 13, 2015) (citing Program Operations Manual System (POMS) DI 25005.020(B), available at http://policy.ssa.gov/poms.nsf/lnx/0425005020Z). The ALJ may not use a job's least demanding function when identifying a claimant's past relevant work. See Valencia v. Heckler, 751 F.2d 1081, 1087 (9th Cir. 1985). However, with respect to such work that requires varying duties and levels of exertion, SSR 82-61 also states the following:

A former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found "not disabled."

SSR 82-61, 1982 WL 31387, at *2.

### 2. The ALJ Properly Found That Plaintiff Could Perform The File Clerk Job As Generally And Actually Performed

In his work history and disability reports, Plaintiff stated that he had past relevant work as a file clerk. (AR 220, 244, 252). Plaintiff described his duties as file clerk to include "plac[ing] all folders in numerical order" and "tak[ing] [files] to clients and pick[ing] up from clients," which "often" required driving to "different cities" in Riverside and Orange County. (AR 220). Plaintiff's job as actually performed included driving duties that were not mentioned in the DOT description for file clerk, see DOT 206.387-034,[4] but there is no evidence that these duties constituted

---

[4] According to the DOT, a file clerk "[f]iles records in alphabetical or numerical order, or according to subject matter or other system: Reads incoming material and sorts according to file system. Places cards, forms, microfiche, or other material in

10

a "significant portion" of his work rendering the DOT's definition inapplicable. Plaintiff's counsel had an opportunity to ask the VE to address the purported inconsistency between Plaintiff's description and the DOT, but did not do so. (See AR 54). Because Plaintiff has not established that his file clerk job was a composite job, he has not established that he cannot perform the type of file clerk work that he performed in the past as it is generally performed. See Villa, 797 F.2d at 798; Jack v. Colvin, No. CV 14-08464 RAO, 2015 WL 5567748, at *3 (C.D. Cal. Sept. 22, 2015) (Plaintiff did not meet his burden of showing that he had done work that was "separate and distinct" from his athletic director position); Driskill v. Colvin, No. C13-1928-RAJ, 2014 WL 3734309, at *8 (W.D. Wash. July 28, 2014) ("Plaintiff has not met her burden to show that her waitress job included "significant elements of two or more occupations" and was therefore a composite job.).

Plaintiff contends that the ALJ erred in finding that he could perform the file clerk job as actually performed, because he described the job to require driving, which entails being on task for longer periods than his RFC permits. (Joint Stip. at 7-8). Yet, there is no such limitation. Instead, Plaintiff's RFC precludes him from doing jobs requiring "hypervigilance or intense

---

storage receptacle, such as file cabinet, drawer, or box. Locates and removes files upon request. Keeps records of material removed, stamps material received, traces missing files, and types indexing information on folders. May verify accuracy of material to be filed. May enter information on records. May examine microfilm and microfiche for legibility, using microfilm and microfiche viewers. May color-code material to be filed to reduce filing errors."

concentration on a particular task," because "[h]e would likely be off task up to 10 percent of the workday or workweek due to chronic pain or side effects of medication." (AR 29).

At the hearing, the VE considered Plaintiff's disability reports and work history reports — which specified the duty to drive — in opining that Plaintiff performed the occupation of file clerk at the light level as actually performed. (AR 51). The ALJ then asked the VE two hypotheticals. The ALJ first asked the VE whether, considering Plaintiff's physical limitations, he would be able to perform any of his past relevant work. (AR 52). The VE testified that Plaintiff could perform the job of file clerk "both as described in the DOT and as performed by claimant." (Id.). The ALJ then gave a second hypothetical: "adding onto the first, that the individual also would likely be off-task up to 10 percent of the work day or work week . . . Would that preclude the job of file clerk?" (AR 53). The VE testified, "Obviously we can't discuss every employer or employee relationship. But typically, the red line appears to be that 10 percent. Anything over that is considered inappropriate. So at 10 percent, that would – that would be acceptable." (Id.).

Here, Plaintiff's RFC did not expressly limit his ability to drive, (AR 29), and the VE testified that Plaintiff's mental limitations would not prevent him from performing the duties of file clerk as actually performed. (AR 54). Thus, the ALJ properly relied on the expertise of the VE to provide "the necessary

foundation" to conclude Plaintiff could perform the job of file clerk as actually performed. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ may take administrative notice of any reliable job information, including information provided by a [vocational expert]."); see also Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (an ALJ is entitled to draw inferences logically flowing from the evidence to make his determination). Accordingly, the ALJ's determination that Plaintiff was able to perform his past relevant work as file clerk as actually performed is supported by substantial evidence in the record.

Therefore, the ALJ properly found that Plaintiff could perform his past relevant work as a file clerk as actually and generally performed. The Court finds that Plaintiff did not meet his burden to show that he is unable to perform his past relevant work.

**B.**   **The ALJ Articulated Clear And Convincing Reasons To Find Plaintiff Less Than Fully Credible**

Plaintiff asserts that the ALJ erred in finding him not fully credible. (Joint Stip. at 12-15, 20-21). Plaintiff contends that (1) he could not afford regular medical treatment, which is why there are treatment gaps in Plaintiff's record; and (2), contrary to the ALJ's findings, the objective medical evidence supports Plaintiff's statements and any disconnect between Plaintiff's statements and the objective record "cannot provide a standalone basis" for rejecting Plaintiff's testimony. (Joint Stip. at 14-15).

13

Defendant contends that the ALJ provided the following three clear and convincing reasons to find Plaintiff's statements less than fully credible: (1) the ALJ correctly found that there were significant gaps in Plaintiff's treatment from 2009 to 2011, and the record does not support Plaintiff's assertion that he could not afford treatment; (2) the ALJ's review of the record accurately reflected normal examination findings and conservative treatment; and (3) the ALJ appropriately considered Plaintiff's own inconsistent statements regarding his physical condition. (Joint Stip. at 15-20).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of his subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 806 F.3d 487, 492-93 (9th Cir. 2015) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)). Because there is no evidence of malingering, the "clear and convincing reasons" standard applies.

At the hearing, Plaintiff testified that he could not lift, carry, push, or pull for long periods of time, could stand, walk,

and sit without changing positions for an hour at a time, and could no longer work because of his back condition. (AR 46-48). In forming Plaintiff's RFC, the ALJ adopted Plaintiff's testimony that "[h]e must change positions approximately every hour for five minutes." (AR 29). However, the ALJ declined to adopt Plaintiff's testimony that he could not lift or carry objects, instead finding that Plaintiff could "lift and/or carry 20 pounds occasionally and 10 pounds frequently."

First, the ALJ properly rejected Plaintiff's testimony because there were significant, unexplained gaps in Plaintiff's treatment from 2009 to 2011. Also, at his hearing in 2013, Plaintiff admitted to receiving treatment about "once a year" even though he had medical insurance. (AR 30). An ALJ may consider a Plaintiff's unexplained, significant gaps in treatment in determining whether a Plaintiff is credible. Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). Plaintiff asserts that he did not seek regular treatment because he could not afford it. (Joint Stip. at 14). There is no support in the record for Plaintiff's assertion. The ALJ questioned Plaintiff regarding his treatment history, and Plaintiff testified that he has had the same doctor for four years, has insurance through Medi-Cal, but only sees his doctor about once a year. (AR 47). Based on Plaintiff's testimony and the gaps in treatment, the ALJ could reasonably infer that Plaintiff's statements regarding the disabling nature of his symptoms were less than fully credible.

Second, there was substantial evidence in the record to support the ALJ's finding that the medical evidence did not support Plaintiff's statements. The ALJ noted that although diagnostic imaging revealed moderate to severe degenerative disc disease of the lumbar spine, examinations of Plaintiff showed no neurological deficits or muscle atrophy and he was not referred for surgery. (AR 30). "Although lack of objective medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005); see also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

The record supports the ALJ's credibility findings. Plaintiff consistently showed a somewhat decreased range of motion in the lumbar spine during appointments with Dr. Bernabe, Dr. Flanagan, and Dr. Santz, (AR 281-82, 286, 299, 308), and he had lumbar stenosis and moderate to severe degenerative disc disease. (AR 296-97). The ALJ fully considered these medical findings in formulating Plaintiff's RFC. (See AR 29-32). However, as the ALJ stated, Plaintiff had no signs of muscle atrophy or neurological deficits that would preclude him from lifting or carrying any weight. Plaintiff was able to stand and sit without difficulty, appeared with a normal gait,[5] and had 5 out of 5 muscle strength. (AR 282, 299, 324).

---

[5] On July 13, 2013, Plaintiff appeared at one doctor's appointment with a limp and a cane, but there is no evidence in the

Third, the ALJ properly found that Plaintiff's statements regarding his physical limitations were inconsistent with his allegations of disability. Inconsistent statements regarding a Plaintiff's functional limitations provide a clear and convincing reason to find a plaintiff not fully credible. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (upholding an adverse credibility finding in part due to a claimant's inconsistent statements to her doctors); see also Brown v. Astrue, 405 F. App'x 230, 233 (9th Cir. 2010). The ALJ cited to Plaintiff's August 2012 statement made to Dr. Santz that he could lift 20 pounds repetitively "without pain" and wanted to return to work because he was "pain free." (AR 31, 300). Dr. Santz recommended physical therapy, but Plaintiff declined. (AR 300). The ALJ found this to indicate that Plaintiff's condition was "relatively stable." (Id.). Plaintiff's inconsistent statements regarding his functional limitations, specifically his statement that he could lift 20 pounds repetitively, supports the ALJ's conclusion that Plaintiff is less than fully credible.

The ALJ, in citing to Plaintiff's unexplained gaps in treatment, the medical record, and his inconsistent statements, articulated clear and convincing reasons to find Plaintiff less than fully credible. The ALJ's assessment was consistent with Plaintiff's testimony that he did not regularly see a doctor, although he had insurance; had relatively normal examination

---

record that Plaintiff was prescribed a cane or that he regularly used a cane because of his back problems. (AR 317).

findings; and Plaintiff's own statements regarding his functional limitations indicated greater physical abilities than he claimed. Accordingly, the ALJ properly found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms less than fully credible.

**CONCLUSION**

For the foregoing reasons, the decision of Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 12, 2017

```
              _____/s/_____
                        ALKA SAGAR
              UNITED STATES MAGISTRATE JUDGE
```